**Barbara BARTUCCA, et al.**

**v.**

**KATY INDUSTRIES, INC.**

**Civ. No. N–87–133 (PCD).**

United States District Court, D. Connecticut.

Sept. 11, 1987.

Joseph D. Garrison, Garrison, Kahn, Silbert & Arterton, New Haven, Conn., for plaintiffs.

Christopher B. Nelson, Mary G. Fitzpatrick, Kovar, Nelson & Brittain, Chicago, Ill., Sidney Miller, Miller & Goldman, Hamden, Conn., for defendant.

### RULING ON PENDING MOTIONS

DORSEY, District Judge.

#### I. *Facts and Procedural History*

Plaintiffs are former employees of Wallace Silversmiths, Inc. ("Wallace"), a wholly owned subsidiary of defendant, Katy Industries, Inc. Plaintiffs allege that defendant maintained a plan of termination pay benefits ("Plan") which constituted an "employee welfare benefit plan" under 29 U.S.C. § 1002(1) and imposed on defendant the fiduciary obligations under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* The Plan provided termination pay (or equivalent notice) for any salaried employee whose job elimination was due "to reduced business activity or consolidation of operations." Plan at 1. The amount of the

termination pay was determined by defendant's Director of Personnel based upon a number of factors, including the "circumstances of the termination and the company's financial condition at the time." *Id.* Employees' insurance coverages were also extended for a specified period.

On October 23, 1986, plaintiffs allege that their employment was terminated when defendant sold Wallace to Syratech Corporation. Plaintiffs allege that they were not awarded termination benefits. They claim that defendant (1) breached its fiduciary duties by failing to manage and administer the Plan according to ERISA requirements and by denying termination benefits to plaintiffs when Wallace was sold; (2) violated Connecticut's wage statute, Conn.Gen.Stat. § 31–71a, *et seq.* by denying plaintiffs the Plan benefits which they claim constituted accumulated compensation for past services; and (3) willfully and in bad faith breached its fiduciary duties under ERISA by denying termination benefits to plaintiffs.

Defendant now moves to dismiss the amended complaint in its entirety, Fed.R. Civ.P. 12(b)(6), to strike plaintiffs' prayer for punitive damages, *id.*, and to strike plaintiffs' demand for a jury. Federal R.Civ.P. 39(a)(2).[1]

## II. *Discussion*

A motion to dismiss requires that the facts alleged in the complaint be deemed as admitted and that such complaint not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Fine v. City of New York,* 529 F.2d 70, 75 (2d Cir.1975).

### A. *Counts One and Three Stating an ERISA Claim*

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; ....

29 U.S.C. § 1132(a).

■ Defendants argue that plaintiffs may not maintain their cause of action under *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), because they seek a personal award of damages when, if there was a breach at all, the damages should inure to the Plan. *Russell* held that plan participants or beneficiaries could not bring a private cause of action seeking individual relief under 29 U.S.C. § 1109 for extracontractual damages. As the majority of the Court noted, however, *id.* at 139–48, 105 S.Ct. at 3089–94, and as Justice Brennan strongly pointed out in his concurrence, *id.* at 148–58, 105 S.Ct. at 3094–99, *Russell* was limited to a consideration of § 1109. The Court did not discuss a beneficiary's or plan participant's right to a recovery under §§ 1132(a)(1) or (3). Justice Brennan, joined by three other Justices, argued that, although § 1109 was rightfully interpreted to extend solely to benefits of the plan, the remaining statutory provisions and the legislative history supported a reading which extended to plan participants and beneficiaries the same fiduciary obligations that plan administrators were obliged to exercise with regard to the plan. To paraphrase Justice Brennan's analysis, the purpose of ERISA—as demonstrated in the legislative history, statutory provisions,

---

1. Plaintiffs raise no objection to defendant's motion to strike the jury demand and accordingly the motion is granted.

and the historical principles of black-letter trust law—requires that plan participants be protected from plan mismanagement (whether it be in the investment of funds or in the processing of claims). Section 1132(a)(3) assures that right by authorizing "the award of 'appropriate equitable relief' directly to a plan participant or beneficiary to 'redress' '*any* act or practice which violates *any* provision of this title or the terms of the plan.'" *Id.* at 153, 105 S.Ct. at 3096, quoting § 1132(a)(3) (emphasis in original). Simply stated, *Russell* cannot be read to limit a plan participant's or beneficiary's ability to redress a wrong done to him by a breaching fiduciary. *Foltz v. U.S. News & World Report, Inc.,* 627 F.Supp. 1143, 1165–67 (D.D.C.1986). Accordingly, *Russell* does not prohibit plaintiffs' suit under §§ 1132(a)(1) and (3).

Defendant next argues that, even if plaintiffs are able to assert a claim for breach of a fiduciary duty, they have not alleged sufficient facts to show that defendant breached its fiduciary duty. Principally, defendant argues that 29 U.S.C. § 1104(a)(1)(D) merely required it to administer the Plan in conformance with the instruments and documents governing that Plan. It claims that in order for plaintiffs to have been entitled to any benefits under the Plan they would have to allege and prove (1) involuntary termination; (2) due to job elimination; (3) because of reduced business activity or consolidation of operations. In Paragraphs 12, 23 and 25 of the amended complaint, plaintiffs allege that they were terminated from their positions. In Paragraphs 12 and 27, they attribute these terminations to the elimination of their jobs because of the sale of Wallace to Syratech. From these allegations, it is a permissible inference that the sale of Wallace constituted a reduction in defendant's business activity or a consolidation of its activities. Whether plaintiffs can actually prove involuntary termination given that Syratech allegedly extended some of them offers of employment and whether they can satisfy the remaining conditions are issues for trial. The complaint sufficiently states plaintiff's ERISA claims. The motion to dismiss Counts One and Three is denied.

## B. *Count Two*

In Count Two of the amended complaint, plaintiffs allege that defendant's failure to pay termination "wages" violated Connecticut's wage statutes, Conn.Gen. Stat. § 31–71a, *et seq.* Defendant argues that this claim is preempted by ERISA.

"[T]he provisions of this subchapter ... shall supercede any and all State laws insofar as they may now or hereafter related to any employee benefit plan described in Section 1003(a) of this title and not exempt under Section 1003(b) of this title." 29 U.S.C. § 1144(a). While acknowledging that § 1144(a) has traditionally been interpreted broadly, plaintiffs argue that Count Two deals with a state statute which is closely akin to the one discussed in *Fort Halifax Packing Co. v. Coyne,* —— U.S. ——, 107 S.Ct. 2211, 2213, n. 1, 96 L.Ed.2d 1 (1987), and found to lie outside the bounds of preemption. In *Coyne,* a Maine state statute provided a one-time severance payment to employees of an employer who terminated or moved his operation. The Court, considering § 1144 and its purpose, concluded that ERISA was only designed to preempt state laws which related to employee benefit plans. To make uniform the obligations required to effectively administer plans and, perhaps more importantly, to ensure that all employers meet such obligations, Congress enacted the fiduciary provisions and disclosure requirements of ERISA. The Maine statute in *Coyne* provided only for a "one-time lump-sum payment triggered by a single event" which might or might not occur. *Id.* 107 S.Ct. at 2218. As such, the employer was not required to establish an administrative scheme to effectuate the purpose of the statute. Therefore, there was no conflict with the requirements of ERISA. *Id.* at 2217–18.

Plaintiffs argue that Connecticut's wage statute is analogous to the Maine statute. In *Coyne,* the severance benefit was created solely by state statute and in no way conflicted with any benefits provided by the employer in that case. That is not the situation in this case. Here, plaintiffs allege in Counts One and Three that the benefits to which they claim they are entitled arose from defendant's fiduciary obli-

gations under ERISA. In Count Two, they claim those benefits might alternatively constitute accumulated wages for past services. Obviously, plaintiffs cannot argue on the one hand that defendant breached its fiduciary obligations under ERISA by denying them the benefits to which they claim entitlement under the Plan and then argue, on the other hand, that those same actions subject defendant to statutory civil penalties for wrongfully withholding wages and that such actions were unrelated to the Plan. Plaintiffs' claim of wrongful withholding of past wages arises only because the Plan exists—the same Plan they claim falls within the purview of ERISA. Furthermore, contrary to plaintiffs' contention, defendant was obliged to establish an administrative scheme for the management of the ERISA Plan. The amount to which an employee was entitled could "vary depending upon the circumstances of the termination and the company's financial condition at the time." Plan at 1. Determining whether an employee was entitled to termination pay/notice was likewise a function of an assessment of a number of factors specified by the Plan. *See id.* at 1–2. Thus, the Plan did not merely establish a mathematical calculation, but required defendant to assess its employees' entitlement to benefits in relation to specified circumstances.

ERISA's preemption of state law was meant to minimize interference with the administration of employee benefit plans, so that employers can administer plans uniformly in each state in which they have employees. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 105, 103 S.Ct. 2890, 2904, 77 L.Ed.2d 490 (1983). If the Plan in this case does, in fact, constitute a plan for ERISA purposes, then the state wage statute would conflict with the administration of such Plan and would thus fall under the preemption provision, § 1144. *Coyne,* 107 S.Ct. at 2217. Preemption was intended to facilitate uniform administrative procedures governed by a single set of regulations. *See generally Gilbert v. Burlington Indus.,* 765 F.2d 320, 326–28 (2d Cir. 1985), *aff'd,* — U.S. —, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986); *see also Holland v. Burlington Indus.,* 772 F.2d 1140, 1146–48

(4th Cir.1985), *aff'd,* — U.S. —, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986); *Blakeman v. Mead Containers,* 779 F.2d 1146, 1151 (6th Cir.1985); *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1502 (9th Cir.1985).

### C. *Punitive Damages*

■ Defendant's final argument is that plaintiffs' claim for punitive damages should be stricken. Although the Supreme Court has yet to make a definitive ruling on this issue, the weight of authority holds that punitive damages are not available under § 1132.

Under the law of trusts, trustees are not ordinarily liable for punitive damages for breach of fiduciary duty. Restatement (Second) of Trusts § 205 (1959). Similarly, ERISA, which incorporates the principles of trust law, does not provide for punitive damages. Instead, § 1132(a) merely provides for "redress" of violations of the statute. To redress a wrong is to make whole and compensate the victim of that wrong. Punitive damages are awarded to punish and deter future wrongdoing. *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 48, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979). Based on a similar analysis and upon a review of *Russell; Pilot Life Ins. Co. v. Dedaux,* — U.S. —, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987), and decisions from the Fourth, Fifth, Seventh and Eighth Circuits, the Sixth Circuit concluded that the Supreme Court would hold that ERISA does not provide for punitive damages. *Varhola v. Doe,* 820 F.2d 809, 817 (6th Cir.1987). Plaintiffs have afforded no persuasive authority to the contrary. Accordingly, the request for punitive damages will be stricken.

### III. *Conclusion*

For the reasons above, Count Two is dismissed and the claims for a jury trial and for punitive damages are stricken.

SO ORDERED.